IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEC RAMSEY EILAND,<br><br>Defendant. | 4:18CR3154<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

On November 7, 2018, prior to his arrest, Defendant Alec Ramsey Eiland spoke with law enforcement. He now moves to suppress the statements made and the evidence found on his cell phone, arguing any statements were obtained in violation of Miranda[1] and his statements and any alleged consent to search the cell phone were unknowing, involuntary, and coerced. (Filing No. 24).[2] For the reasons stated below, the motion to suppress should be denied.

STATEMENT OF FACTS

After hearing extensive testimony and reviewing the documentary and audio evidence, the undersigned magistrate judge finds the following facts are credible:

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] At the evidentiary hearing, defense counsel further argued that the search of the cell phone must be suppressed as fruit of the Fifth Amendment violations. However, the Fifth Amendment provides no basis for suppressing physical evidence obtained as the fruit of a voluntary statement, even if the statement is inadmissible under Miranda. United States v. Patane, 542 U.S. 630 (2004); United States v. Morgan, 729 F.3d 1086, 1088 (8th Cir. 2013); United States v. Villalba-Alvarado, 345 F.3d 1007 (8th Cir. 2003).

On November 7, 2018, Special Agent John Hallock interviewed Defendant in the outdoor parking lot of Defendant's apartment complex. (Exhibit 1, Filing No. 31, audio file at 00:47:20, 1:06:40). Special Agents Brandon Day and Jonathan Robitaille were also present. (Filing No. 31, audio file at 1:06:00). The initial exchange between Hallock and Defendant was recorded and lasted approximately three minutes and fifteen seconds.

During the first recorded exchange, Hallock produced a written rights advisement and explained to the defendant each of the rights enumerated in Miranda. (Filing No. 31, audio file at 00:47:35). Hallock asked Defendant to read the rights and to sign the form if he was willing to answer questions without a lawyer present. (Exhibit 1, Filing No. 31, audio file at 00:48: 00). Defendant asked several questions regarding his right to an attorney, including "What if I want a lawyer?" (Filing No. 31, audio file at 00:48:15). Hallock responded, "That's up to you," adding that this would be a chance for Defendant to tell his side of the story. (Exhibit 1, Filing No. 31, audio file at 00:32:30). After some back and forth, Defendant indicated that he would be more comfortable with his father or a lawyer present because he did not want to incriminate himself. (Exhibit 1, Filing No. 31, audio file 00:50:15). Hallock stated that it was up to Defendant to decide what to do. (Filing No. 31, audio file at 00:51:55). Defendant stated "I would rather have a lawyer. I'm sorry, guys." (Id. at 00:52:15). Hallock responded "You don't have to be sorry, sir, that's your right." (Id. at 1:09:50).

Hallock began packing up his recording equipment and the agents prepared to leave the parking lot. (Filing No. 31, audio file at 1:02:15). Defendant understood this to be a sign that Hallock was prepared to leave. (Id. at 1:42:45). Hallock advised Defendant that he may have the opportunity to proffer through his defense counsel in the future. (Id. at 00:11:45). As is his practice, Hallock

2

explained that cooperative defendants may receive some kind of consideration compared to uncooperative defendants. (Id.) Defendant understood this advice as indicating that his outcome may be better if he cooperated. (Filing No. 31, audio file at 1:46:50) Defendant reinitiated contact and said something to the effect of "I want to help" or "I want to talk." (Id. at 00:13:00). Day was present and heard these statements. (Id. at 1:10:30).

Hallock understood Defendant's statements to mean he was initiating a voluntary conversation about the charges in this case. Hallock unpacked his recording equipment and turned it back on. (Filing No. 31, audio file at 00:13:30). Hallock then had the following exchange with Defendant:

> Hallock: Ok, the second part of the interview with Alec Eiland. Mr. Eiland initially invoked his right to counsel. He has now decided that he wants to come forward and talk with us. Is that correct, Mr. Eiland?
>
> Defendant: It is correct.

(Exhibit 2).

Hallock asked whether Defendant made the decision to talk on his own behalf, and whether he was coerced into making his decision. Defendant confirmed that it was his decision and that he had not been coerced. (Exhibit 2). Hallock stated that Day and Robitaille were present, as well as task force officer Tony Sattlefield. (Filing No. 31, audio file at 1:06:00). Hallock again provided Defendant a written advisement of his rights and advised Defendant verbally of all Miranda rights. Hallock told Defendant that if he wanted to speak with the agents, he could sign the form which states "I have read this statement of my rights. I understand what my rights are. At this time I am willing to answer

3

questions without a lawyer present." (Exhibit 2). Defendant signed the form, and Hallock and the other investigators witnessed Defendant's signature.

Hallock questioned defendant about the cyberstalking activity directed at the victims in this case, and Defendant made certain statements in response. (Exhibit 2, Filing No. 31, audio file at 00:14:50). At the end of the interview, Defendant was placed under arrest. (Filing No. 31, audio file at 00:59:15).

Hallock also asked Defendant about his cell phone, and they filled out an FD-26 form, a standard consent form used by the federal bureau of investigation. (Filing No. 31, audio file at 00:15:10). The form includes an advisement that an individual has the right to refuse consent. Defendant signed the form giving consent to search his cell phone. (Id. at 00:15:30, at 1:45:00).

On March 15, 2019, Defendant filed a motion seeking suppression of "any and all statements given by Defendant in the above-captioned case along with the search of Defendant's phone." (Filing No. 24).

Defendant testified at the hearing on his motion to suppress that during the time between the two recordings one of the agents raised his voice and said "That's alright, but this is going to end tonight." (Filing No. 31, audio file at 1:27:20). Defendant said he thought that he should cooperate at that time because if he didn't, it would "make the situation worse in the long run." (Id).

Defendant testified that he understood Hallock was prepared to leave after the first interview, and also that Day told him he could tell his employer that he would only be a couple minutes late for work that day. (Filing No. 31, audio file at 1:42:30). During questioning, the agents held Defendant's phone and told him he

4

would get it back later. Defendant acknowledges that he was not threatened or physically intimidated, and he did not fear for his physical well-being. (Filing No. 31, audio file at 1:46:00). Nonetheless, Defendant thought he would be arrested and interviewed "no matter what" so he did not feel that he was free to leave. (Id. at 1:29:00-1:31:10, 1:43:00).

## ANALYSIS

Defendant argues that the statements he gave to law enforcement officials during the November 7, 2018 interview must be suppressed because the officers violated Miranda and his statements were involuntary. He also argues that the seizure and search of his phone "violated Defendant's 4th Amendment rights against illegal searches and seizures, or, alternatively, was the product of the illegally obtained statement." (Filing No. 25).

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. For the purposes of the Miranda warnings "interrogation" refers to "questioning initiated by law enforcement officers." Id. at 444. This definition was later enlarged to include "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

"A 'suspect must unambiguously request counsel.'" Where a suspect does not "'articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement

5

to be a request for an attorney . . . [the law] does not require that the officers stop questioning the suspect.'" Dormire v. Wilkinson, 249 F.3d 801, 804–05 (8th Cir. 2001)(quoting Davis v. United States, 512 U.S. 452, 457, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). An officer is not required to stop his interrogation whenever a suspect says the words "lawyer" or "attorney." See Davis, 512 U.S. at 459. While it may be "good police practice" to clarify whether a suspect wants an attorney present after an ambiguous reference is made, such conduct is not required by Miranda. Davis, 512 U.S. at 461–62.

Here, Defendant was not under arrest and he was not handcuffed when he spoke to law enforcement. The officers approached him in a public area—the parking lot of his apartment complex— during his lunch hour break from work. He was aware he could walk away and was allowed to contact his employer to state he would be late. After he was advised of his Miranda rights, Defendant told the officers that he preferred to have counsel or his father present before answering questions. While this was not a clear and unambiguous request for counsel, the officers nonetheless stopped asking for Defendant's cooperation and began packing up to leave. Under the totality of these facts, the court finds Defendant was neither subjected to custodial interrogation nor denied his unambiguous request for counsel. To the contrary, Agent Hallock's conduct and statements afforded Defendant more rights and advisements than required under the Fifth Amendment.

As Agent Hallock prepared to leave, Defendant initiated further conversation with the officers, then indicating he wanted to answer questions. Although Defendant knew he could refuse to speak with law enforcement, Defendant agreed to answer questions and he consented to the search of his cell phone, both consents memorialized by audio recording and in writing.

6

Defendant argues that his statements were the product of an overborne will and were not voluntary. To be admissible under the Fifth Amendment, a statement of the defendant must be voluntary. Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009) The determination of whether a defendant has voluntarily waived his Miranda rights is "an extremely fact sensitive analysis." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010) (citing United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999)). The test for voluntariness is whether, "in light of the totality of circumstances, pressures exerted upon the suspect have overborn his will." United States v. Jorgensen, 871 F.2d 725, 729 (1989)(quoting Haynes v. Washington, 373 U.S. 503, 513–14 (1963)). Factors the court should examine include the details of the interrogation including tactics used by the officer, and characteristics of the defendant. United States v. Wilson, 787 F.2d 375, 381 (8th Cir. 1986). "[T]wo key factors . . . are the conduct of the law enforcement officials and the capacity of the suspect to resist the pressure to confess." United States v. Klime, 99 F.3d 870, 879–80 (8th Cir. 1996). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson v. United States, 530 U.S. 428, 444 (2000).

The investigating officers were professional throughout their encounter with the defendant. Defendant states that after he initially stated he preferred to have counsel, one of them loudly announced "That's alright, but this is going to end tonight." Assuming this statement was made, it was not a threat but rather a statement of fact. No guns were brandished and the officers' tone was not aggressive. The defendant was not intimidated by the officers—he admitted as such. He was clearly advised of his Miranda rights, and then chose to answer

7

questions. His responses were knowing and voluntary, not the product of coercion. Defendant's "will to remain silent" was not overborne and "his capacity for self-determination" was not critically impaired. United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002).

Defendant's Fifth Amendment rights were not violated. His statements should not be suppressed.

Defendant claims he did not voluntarily consent to the search of his cellphone. As to these questions, the court consider the suspect's age, general intelligence and education; whether he was intoxicated or under the influence of drugs when consenting; whether he consented after being informed of his Miranda rights and his right to withhold consent; and whether, because he was previously arrested, the defendant was aware of the protections afforded to suspected criminals by the legal system. U.S. v. Griffith, 533 F.3d 979, 984 (8th Cir. 2008).

Defendant is an English-speaking adult of at least normal intelligence. He was not under the influence when presented with the consent to search form. He was approached during daylight hours in a public place. The form itself states he could refuse consent, but he nonetheless signed it. The court finds the defendant's consent to search his cellphone was knowing, intelligent and voluntary. The cellphone search did not violate Defendant's Fourth Amendment rights.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 24) be denied.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Honorable John M. Gerrard, Chief United States District Judge, in Courtroom 1, United Stated District Court, Lincoln, Nebraska at 9:00 a.m. on June 25, 2019, or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

May 22, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge